IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHANNING TATE,                                           3:15-CV-02157-PK

       Plaintiff,                                      OPINION AND ORDER

v.

GRAND PRIX MOTORS, INC., a
domestic corporation; BL & DJ
ENTERPRISES, INC., dba
WILSONVILLE TOYOTA SCION, a
domestic corporation; and
PARS AUTO MART INC., a
domestic corporation.,

       Defendants.


YOUNG W. WALGENKIM
Hanson & Walgenkim, LLC
838 Commercial Street N.E.
Salem, OR 97301
(503) 383-1496

       Attorneys for Plaintiff

MATTHEW T. PIWONKA
1001 S.W. Fifth Avenue
Suite 1405
Portland, OR 97204
(503) 274-0424

       Attorney for Defendant BL & DJ Enterprises, Inc.

**CONRAD L. ZUBEL**
1500 S.W. Taylor Street
Portland, OR 97205
(503) 220-1227

   Attorney for Defendant Pars Auto Mart Inc.

**BROWN, Judge.**

   This matter comes before the Court on Plaintiff's Motion
(#16) for Default Judgment as to Grand Prix Motors Only and
Plaintiff's Motion (#19) for an Award of Attorney Fees and Costs.
For the reasons that follow, the Court **GRANTS** Plaintiff's Motion
for Default Judgment, **GRANTS** Plaintiff's Motion for an Award of
Attorney Fees and Costs, and **AWARDS** Plaintiff attorneys' fees of
**$5,890.00** and costs of **$449.50**.

<u>BACKGROUND</u>

   The following facts are taken from Plaintiff's Complaint and
materials filed in support of his Motion for Default Judgment.

   On September 6, 2012, Defendant Grand Prix purchased a 2008
BMW 335i from Manheim Auction.[1]  Manheim "announced" the BMW as
"'TMU' (True Mileage Unknown), but represented the mileage as
28,190."  Compl. at ¶ 13.

   On October 18, 2012, Grand Prix sold the BMW to "a consumer
and represented the BMW as having 28,210 miles, and signed a

---

   [1] Manheim Auction is not a party to this action.

2 - OPINION AND ORDER

Secure Odometer Disclosure certifying that the odometer reading [was] the actual mileage of the vehicle." Compl. at ¶ 14. Grand Prix did not check either of the boxes on the Secure Odometer Disclosure form that indicated "[t]he mileage stated is in **EXCESS** of its mechanical limits" or "[t]he odometer reading is **NOT** the actual mileage. **WARNING – ODOMETER DISCREPANCY**." Compl. at ¶ 15.

On March 8, 2014, Defendant BL & DJ Enterprises, Inc., dba Wilsonville Toyota Scion (Wilsonville), purchased the BMW from "a consumer."

On March 14, 2014, Wilsonville sold the BMW to Defendant Pars Automart Inc. Wilsonville represented to Pars that the BMW had 49,329 miles and signed a Secure Odometer Disclosure certifying that the odometer reading reflected the actual mileage of the vehicle. Wilsonville did not check either of the boxes on the Secure Odometer Disclosure form that indicated "[t]he mileage stated is in **EXCESS** of its mechanical limits" or "[t]he odometer reading is **NOT** the actual mileage. **WARNING – ODOMETER DISCREPANCY**." Compl. at ¶ 18.

On March 21, 2014, Pars sold the BMW to Luxury Motors Online Inc. (Luxmoto)[2] and represented the BMW had 49,843 miles. Pars signed a Secure Odometer Disclosure certifying that the odometer

---

[2] Luxmoto is not a party to this action.

reading reflected the actual mileage of the vehicle.  Pars did
not check either of the boxes on the Secure Odometer Disclosure
form that indicated "[t]he mileage stated is in **EXCESS** of its
mechanical limits" or "[t]he odometer reading is **NOT** the actual
mileage.  **WARNING – ODOMETER DISCREPANCY.**"  Compl. at ¶ 20.

On April 8, 2014, Plaintiff purchased the BMW from Luxmoto
for $19,995.  Luxmoto signed a Secure Odometer Disclosure
certifying that the odometer reading reflected the actual mileage
of the vehicle.  Luxmoto did not check either of the boxes on the
Secure Odometer Disclosure form that indicated "[t]he mileage
stated is in **EXCESS** of its mechanical limits" or "[t]he odometer
reading is **NOT** the actual mileage.  **WARNING – ODOMETER
DISCREPANCY.**"  Compl., Ex. 2 at 1.

On November 18, 2015, Plaintiff filed a Complaint in this
Court alleging Defendants violated the Truth in Mileage Act
(TIMA), 49 U.S.C. § 32701, related to the sale of the BMW.
Specifically, Plaintiff alleges:

> When Defendants sold the BMW, they knew that the
> odometer reading differed from [the] actual
> mileage, and that difference was greater than that
> caused by odometer calibration error.
>
> However, Defendants did not inform the buyer that
> the odometer mileage was inaccurate.
>
> Defendants did not include a statement that the
> odometer reading did not reflect the actual
> mileage, and should not have been relied upon.
>
> Defendants did not include a warning notice to

>       alert the transferee that a discrepancy existed
>       between the odometer reading and the actual
>       mileage.

Compl. at ¶¶ 25-28.  Plaintiff seeks damages plus attorneys' fees

and costs.

On January 8, 2016, Plaintiff served Grand Prix with the

Summons and Complaint.  Grand Prix did not file a responsive

pleading.

On February 25, 2016, Plaintiff filed a Motion (#11) for

Entry of Default against Grand Prix.

On February 25, 2016, Magistrate Judge Paul Papak issued an

Order (#14) granting Plaintiff's Motion for Entry of Default and

directing Plaintiff to file a Motion for Default Judgment.

On March 3, 2016, Plaintiff filed a Motion (#16) for Default

Judgment against Grand Prix in which he seeks a judgment in favor

of Plaintiff, $20,001.00 in damages, $3,625.00 in attorneys'

fees, and $449.50 in costs.  On March 3, 2016, Plaintiff also

filed a Motion (#19) for Award of Attorney Fees and Costs against

Grand Prix in which Plaintiff seeks $3,625.00 in attorneys' fees

and $449.50 in costs.

On March 22, 2016, the Court entered an Order in which it

noted it had reviewed Plaintiff's Motion for Default Judgment and

Plaintiff's Motion for Attorney Fees and Costs and directed

Plaintiff to file a Supplemental Memorandum addressing the

following:

5 - OPINION AND ORDER

> (1) Does the absence of [Luxmoto] prevent (as
> asserted in the Answer of [Pars]) complete relief
> among the existing parties and, if so, does the
> absence of a potentially necessary party affect
> whether the Court should proceed to award damages
> against . . . [Grand Prix]; (2) May the Court rely
> only on Plaintiff's uncorroborated "estimate" of
> damages in the amount of $6,667.  ([T]he Court
> notes that figure is exactly one-third of the
> treble damages maximum statutory award and
> questions its reliability on this undeveloped
> record);
> (3) Assuming the Court may proceed to enter
> Judgment and, therefore, proceed to consider
> Plaintiff's Motion for an Award of Attorney's
> Fees, the Court notes Plaintiff seeks $250 per
> hour, but the Oregon State Bar Economic Survey
> reflects the rate for an attorney with 3 years
> experience practicing in Salem should be in the
> range of $177-$204 per hour.

March 22, 2016, Order at 1.

On April 21, 2016, Plaintiff filed a Supplemental Memorandum in Support of Plaintiff's Motion for Default Judgment in which, among other things, he revised his request for attorneys' fees to $9,350.00.  The Court took Plaintiff's Motions under advisement on April 21, 2016.


**PLAINTIFF'S MOTION (#16) FOR DEFAULT JUDGMENT**

As noted, Plaintiff seeks a default judgment only against Grand Prix to include damages of $20,001.00 for violation of TIMA.

**I.   Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter a default judgment after default has been entered

6 - OPINION AND ORDER

by the Clerk of Court.  After the Clerk has entered a default
pursuant to Rule 55(a), the factual allegations of Plaintiff's
Complaint are taken as true, but Plaintiff has the burden to
prove his damages.  *See DirecTV Inc. v. Mina Chau*, No. 11cv1821
WQH (BGS), 2012 WL 5967113, at *3 (S.D. Cal. Nov. 27, 2012)
(citing *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-
18 (9th Cir. 1987)).

## II.  TIMA Generally

TIMA[3] requires the transferor[4] of a motor vehicle either to
disclose in writing "the cumulative mileage registered on the
[vehicle's] odometer" or to "[d]isclose [in writing] that the
actual mileage is unknown, if the transferor knows the odometer
reading is different from the number of miles the vehicle has
actually traveled."  49 U.S.C. § 32705.  The written disclosure
must be signed by the transferor and transferee and must contain,
among other things, "[t]he odometer reading at the time of
transfer (not to include tenths of miles)."  49 C.F.R.
§ 580.5(c)(1).  In addition, 49 C.F.R. § 580.5(e) provides:

> (1)  The transferor shall certify that to the best
> of his knowledge the odometer reading reflects the
> actual mileage, or;

---

[3] Courts often refer to TIMA as the Odometer Act.

[4] A transferor is "any person who transfers his ownership of
a motor vehicle by sale, gift, or any means other than by the
creation of a security interest, and any person who, as agent,
signs an odometer disclosure statement for the transferor."  49
C.F.R. § 580.3.

(2)  If the transferor knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit, he shall include a statement to that effect; or

(3)  If the transferor knows that the odometer reading differs from the mileage and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the odometer reading does not reflect the actual mileage, and should not be relied upon. This statement shall also include a warning notice to alert the transferee that a discrepancy exists between the odometer reading and the actual mileage.

Although the Ninth Circuit has not addressed TIMA, other courts have held when a transferor fails to comply with the requirements of TIMA and its implementing regulations with intent to defraud, the transferor is subject to an action by the transferee and is liable for treble damages or $1,500, whichever is greater.  *See, e.g., Suiter v. Mitchell Motor Coach Sales, Inc.,* 151 F.3d 1275, 1278 (10th Cir. 1998)(citing 49 U.S.C. § 32710).  *See also* TIMA, 49 U.S.C. § 32709 (providing a transferor who violates the Odometer Act may be subject to both civil and criminal penalties).

"A transferor of a vehicle may be found to have intended to defraud if he had reason to know the mileage on the vehicle was more than was reflected by the odometer or certification of the previous owner and . . . failed to take reasonable steps to determine the actual mileage."  *Haynes v. Manning*, 917 F.2d 450, 453 (10th Cir. 1990).

> If a person violates an odometer disclosure
> requirement with actual knowledge that he is
> committing a violation, [it can be inferred] that
> the violation was committed with an intent to
> defraud a purchaser.  Likewise, if a person lacks
> knowledge that an odometer disclosure statement is
> false only because he displays a reckless
> disregard for the truth, [it can be] infer[red]
> that the violation was committed with an intent to
> defraud a purchaser.  The inference of an intent
> to defraud is no less compelling when a person
> lacks actual knowledge of a false odometer
> statement only by "clos[ing] his eyes to the
> truth."

*Tusa v. Omaha Auto. Auction, Inc.*, 712 F.2d 1248, 1253-54 (8th Cir. 1983)(citation omitted).  *See also Haynes*, 917 F.2d at 453 (same); *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978)(same).

In addition, "privity is unnecessary between the defrauded party and the party that violated the [TIMA] with an intent to defraud."  *Tusa*, 712 F.2d at 1251 n.2.  *See also Alley v. Chrysler Cred. Corp.*, 767 F.2d 138, 142 (5th Cir. 1985); *Ryan v. E.W. Edwards, Jr.*, 592 F.2d 756, 761 (4th Cir. 1979)(same).  "Nor does the statute's language require the plaintiff to prove his reliance on each false statement. . . .  The dispositive [issue] is the transferor's intent to defraud."  *Ryan*, 592 F.2d at 761.

Finally, a plaintiff "may recover . . . damages from each transferor in his chain of title who made false mileage statements with such intent."  *Id*. at 761-62.  *See also Alley*, 767 F.2d at 142 (same).

**III. Plaintiff's Claim Against Grand Prix**

In light of Grand Prix's default Plaintiff's Complaint establishes Grand Prix purchased the BMW on September 6, 2012, from Manheim, at which time Manheim advised Grand Prix that the vehicle was TMU but "represented the mileage as 28,190."  On October 18, 2012, Grand Prix sold the BMW to "a consumer" and signed a Secure Odometer Disclosure form, but it did not check either of the boxes on the Secure Odometer Disclosure form that indicated "[t]he mileage stated is in **EXCESS** of its mechanical limits" or "[t]he odometer reading is **NOT** the actual mileage. **WARNING – ODOMETER DISCREPANCY**" even though Grand Prix knew the true mileage of the vehicle was unknown.

As noted, TIMA requires the transferor of a motor vehicle either to disclose in writing "the cumulative mileage registered on the [vehicle's] odometer" or to "[d]isclose [in writing] that the actual mileage is unknown, if the transferor knows the odometer reading is different from the number of miles the vehicle has actually traveled."  49 U.S.C. § 32705.  Grand Prix did not comply with this provision of TIMA when it sold the vehicle to "a consumer."  Further, "privity is unnecessary between the defrauded party and the party that violated the [TIMA] with an intent to defraud." *Tusa*, 712 F.2d at 1251 n.2. A plaintiff "may recover . . . damages from each transferor in his chain of title who made false mileage statements with such

intent." *Id.* at 761–62.  Thus, the fact that Plaintiff did not purchase the vehicle from Grand Prix does not prohibit Plaintiff from recovering from Grand Prix under TIMA.

## IV.  Joinder of Luxmoto

At issue in Plaintiff's request for a default judgment is whether Luxmoto is an indispensable party whose interest may be impaired or impeded if it is not joined in this action.

Joinder of an absent party is governed by Federal Rule of Civil Procedure 19, which provides in pertinent part:

> (a) Persons Required to Be Joined if Feasible.
>
> (1)  Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)  in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i)  as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> (2)  Joinder by Court Order.  If a person has not been joined as required, the court must order that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary

plaintiff.

\* \* \*

(b)  When Joinder Is Not Feasible.  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(a)-(b).

Joinder under Rule 19 requires the court to engage in three successive inquiries. *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010).  First, the court must determine whether an absent nonparty qualifies as a person "required to be joined if feasible" under Rule 19(a).  *Id*.  If the nonparty meets the requirements of Rule 19(a), the second step requires the court to determine whether it is feasible to order that the nonparty be joined.  *Id.*  If joinder is not feasible, the court

continues to the third step to determine pursuant to Rule 19(b) whether the case can proceed without the nonparty or whether the action must be dismissed.  *Id.  See also* Fed. R. Civ. P. 19(b). Four factors are relevant to that inquiry:  (1) the extent to which a judgment rendered in the nonparty's absence might prejudice that nonparty or the existing parties, (2) the extent to which any prejudice could be lessened or avoided, (3) whether a judgment rendered in the nonparty's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the action was dismissed for nonjoinder.  Fed. R. Civ. P. 19(b). Dismissal is required only when the nonparty has an interest "of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."  *Id.* (quotation omitted).  The moving party has the burden to show that dismissal is required under Rule 19.  *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992).

When determining whether an absent party is a required party under Rule 19(a), the Court must consider (1) whether complete relief can be granted among the existing parties, (2) whether the absent party claims an interest that may be impaired or impeded without the absent party, and (3) whether the absent party claims an interest that causes the existing party to be at risk of

multiple or otherwise inconsistent obligations.

**A. Complete relief can be granted among the existing parties without joinder of Luxmoto.**

"Complete relief" in Rule 19(a) refers to relief between the persons or entities who are already parties to the litigation rather than between the parties and the absent person or entity whose joinder is sought. *In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 894 (N. D. Cal. 2011)(citing *Takeda v. Northerwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985)). In addition, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015)(citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). Thus, under this rule even a joint "tortfeasor with the usual joint and several liability is merely a permissive [rather than a required] party to an action against another with like liability." *Temple*, 498 U.S. at 7.

Here the absence of Luxmoto as a party will not have any effect on the remedies sought by Plaintiff from the present parties. Courts have made clear that a relationship such as the one between Luxmoto and the current Defendants does not rise to the level of joint tortfeasors because each transaction alleged in Plaintiff's Complaint constitutes a separate violation of TIMA by different Defendants. *See, e.g., Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 142 (5th Cir. 1985)(When "separate odometer

14 - OPINION AND ORDER

statements were issued, each issuer is subject to separate and
individual liability under the Act."). *See also Ryan*, 592 F.2d
at 761-62 ("[Plaintiff] may recover the statutory damages from
each transferor in his chain of title who made false mileage
statements with such intent."); *Shaghoian,* 228 F. Supp. 2d at
1112 (Plaintiff "may recover . . . damages from each transferor
in his chain of title who made false mileage statements with such
intent."). Because Plaintiff may recover damages from each
transferor in his chain of title, the entry of a judgment against
Grand Prix would not affect any potential judgment against
Luxmoto in the future. Thus, it is possible for the parties to
obtain complete relief without joinder of Luxmoto.

**B.  Luxmoto does not claim an interest that would be
    impaired or impeded if it is not joined in this action.**

The Ninth Circuit has held ""[j]oinder is 'contingent
. . . upon an initial requirement that the absent party *claim* a
legally protected interest relating to the subject matter of the
action.'" *Ward*, 791 F.3d at 1051 (quoting *United States v.
Bowen*, 172 F.3d 682, 689 (9th Cir. 1999)(emphasis in original)).
Thus, when "a party is aware of an action and chooses not to
claim an interest, the district court does not err by holding
that joinder was 'unnecessary.'" *Altmann v. Rep. of Austria*, 317
F.3d 954, 971 (9th Cir. 2002)(citation omitted).

Plaintiff served Luxmoto with a copy of the Complaint
in this matter. Luxmoto, however, declined to be a party to the
15 - OPINION AND ORDER

action because it has a binding arbitration agreement with Plaintiff.  Luxmoto, therefore, does not claim a legally protected interest in this action.  *See, e.g., Bowen*, 172 F.3d at 689; *Altman*, 317 F.3d at 972; *Assoc. to Protect Hammersley, Eld, and Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1015 (9th Cir. 2002).

### C.   Defendants do not risk multiple or inconsistent obligations if Luxmoto is not joined.

Courts have held under TIMA that "any wrongdoer in the chain of violations would not be permitted to recover damages from previous wrongdoers." *Alley*, 767 F.2d at 142.  Thus, if Plaintiff were to recover damages from Luxmoto in a separate action, Luxmoto would not be permitted to recover damages from any Defendant in this matter.  Defendants, therefore, do not risk liability for multiple or inconsistent obligations if Luxmoto is not joined.

In summary, the Court concludes Luxmoto is not a required party pursuant to Rule 19(a).  Accordingly, the Court concludes this matter, including Plaintiff's request for default judgment against Grand Prix, may go forward without joinder of Luxmoto.

## V.   Plaintiff's Damages

As noted, Plaintiff seeks $20,001.00 in damages from Grand Prix.

When a responsive pleading is required and the party fails to respond, the allegations "other than [those] relating to the

16 - OPINION AND ORDER

amount of damages" are admitted pursuant to Federal Rule of Civil
Procedure 8(b)(6).  In addition, under Federal Rule of Civil
Procedure 55(b)(1) and (b)(2) the Court may enter judgment for
the amount of damages pled when the plaintiff's "claim is for a
sum certain or a sum that can be made certain by computation."
When the plaintiff's claim is not for a sum certain, the court
"may conduct hearings . . . when . . . it needs to (A) conduct an
accounting; (B) determine the amount of damages; (C) establish
the truth of any allegation by evidence; or (D) investigate any
other matter."  The Ninth Circuit has held "a claim is not a sum
certain unless no doubt remains as to the amount to which a
plaintiff is entitled as a result of the defendant's default."
*Franchise Holding II, LLC v. Huntington Rest. Grp., Inc.*, 375
F.3d 922, 929 (9th Cir. 2004).  Plaintiff concedes the amount of
damages he seeks is not a sum certain.  The Court, therefore, has
discretion to conduct a hearing on damages or to make a
determination of damages based on affidavits and documentary
evidence.  *Graham v. Forever Young Oregon, LLC*, No. 03:13-CV-
01962-HU (D. Or. July 14, 2014).

   As noted, TIMA provides "[a] person that violates this
chapter . . . is liable for 3 times the actual damages or
$10,000, whichever is greater."  49 U.S.C. § 32710(a).  Plaintiff
notes he has not been able to find an Oregon case that addresses
the calculation of actual damages under TIMA.  Plaintiff,

17 - OPINION AND ORDER

therefore, proposes two alternatives for the Court to calculate actual damages:  the out-of-pocket rule or the formula set out in *Klein v. Pincus*, 397 F. Supp. 2d 847 (E.D.N.Y. 1975).

### A.   Damages under the Out-of-Pocket Rule

Plaintiff asserts the closest analogy to TIMA in Oregon is fraud because "false odometer disclosure is a fraudulent misrepresentation."  Oregon courts have noted "[i]t is well established [in Oregon] that in an action for fraud plaintiff's recovery is limited to that measured by the 'out-of-pocket' rule[, which is] . . . the difference between the price [the plaintiff] paid for the property and its fair market value at the time of the sale." *Morasch v. Hood*, 232 Or. App. 392, 400 (2009).

Plaintiff asserts the difficulty in this case is finding the fair market value of the BMW at the time of the sale to Plaintiff if the odometer discrepancy had been properly disclosed at every previous sale.  Plaintiff asserts the diminished value of the BMW due to the odometer discrepancy "would be more than a mere 'mileage deduction' as reported in various car value guides" because those guides "assume that mileage readings on automobile odometers are accurate[, that] a vehicle is clean[,] and that there are no hidden or undisclosed problems associated with that specific vehicle."  Plaintiff relies on the declarations of experts to support his position

18 - OPINION AND ORDER

that the diminished value would be more than a mere mileage deduction because "buyers would presumably view such vehicles with some suspicion, and be aware that if they ever wanted to sell the vehicle, they would then have to disclose the mileage discrepancy pursuant to federal law." Decl. of Young Walgenkim, Ex. 7 at ¶ 4. In addition, when "the true mileage [of a vehicle] can be documented, the reduction in value due to odometer discrepancy may be as little as 25%. However, when true mileage cannot be determined, the reduction in value can be as high as 65%." Walgenkim Decl., Ex. 9 at 2. At least "one popular guide . . . recommend[s] a general reduction in value of 50% for salvage or odometer branded vehicles." *Id.* at 1.

The true mileage of the BMW at issue is unknown. The exhibits that Plaintiff attached to his Complaint show a Carfax report from 2015 in which the mileage of the BMW was noted as 31,220 on May 10, 2010. Compl., Ex. 3 at 3. The entry in the report states mileage on April 28, 2011, was 28,178 and contains the note "POTENTIAL ODOMETER ROLLBACK." *Id.* After April 28, 2011, however, the accuracy of the odometer reading cannot be established. As noted, Grand Prix purchased the BMW on September 6, 2012, at auction from Manheim Auction knowing the vehicle was TMU. Plaintiff asserts in light of the fact that the true mileage of the BMW is unknown, a reduction in value of the BMW of 33% from the price Plaintiff paid for it ($19,995.00) is a

19 – OPINION AND ORDER

reasonable compromise between the 25% and 65% reductions cited by Plaintiff's expert.  A 33% reduction in value from $19,995.00 would be $6,598.00.[5]  Three times the actual damages suffered by Plaintiff calculated in this manner would be $19,795.05.

**B.    Damages under the *Klein v. Pincus* Formula**

The second method suggested by Plaintiff to calculate actual damages under TIMA is a formula used by courts in other districts originated in *Klein v. Pincus*.  In *Klein* the court calculated the actual damage resulting from odometer fraud by subtracting the amount the plaintiff received when he sold the vehicle and the average depreciation in the vehicle's value from the price the plaintiff paid for the vehicle.  397 F. Supp. at 851.  The court then trebled the resulting figure to arrive at the final damages.

As noted, Plaintiff purchased the BMW for $19,995.00. In his Declaration Plaintiff testifies he entered the information for the BMW on the National Automobile Dealers Association website and received a report that indicated depreciation for a BMW in good condition at that time was $2,495.00.  Decl. of Channing Tate at ¶ 6 and Ex. 3 at 1.  Plaintiff testifies he also took the BMW to Carmax who offered him $9,000.00 for the BMW due to the odometer discrepancy.  Tate Decl. at ¶ 7.  Applying the

---

[5] Plaintiff incorrectly states a 33% reduction in value from $19,995.00 is $6,667.00.

formula set out in *Klein*, Plaintiff's actual damages would be $19,995.00 less $2,495.00 less $9,000.00 for a total of $8,500.00.  Treble damages as permitted under TIMA, therefore, would be $25,500.00.

Plaintiff notes he only sought $20,001.00 in treble damages in his Complaint, which is a conservative estimate compared to the $25,500 in treble damages that the *Klein* formula yields.  Nevertheless, Plaintiff continues to assert treble damages of $20,001.00 are reasonable notwithstanding the higher amount yielded by the *Klein* formula.

On this record in which the exact amount of actual damages to Plaintiff from the odometer discrepancy is unknowable, the Court concludes the $6,667.00 requested by Plaintiff is a reasonable estimate of actual damages.  The Court, therefore, awards Plaintiff **$20,001.00**, which is three times the best estimate of actual damages that can be achieved on this record.

## PLAINTIFF'S MOTION (#19) FOR AN AWARD OF ATTORNEY FEES AND COSTS

As noted, in his Motion for An Award of Attorney Fees Plaintiff originally sought $3,625 in attorneys' fees.  In his Supplemental Memorandum Plaintiff includes attorneys' fees to prepare and to draft the Supplemental Memorandum for a total request of $9,350.00.

21 – OPINION AND ORDER

## I.  Plaintiff is entitled to reasonable attorneys' fees.

TIMA provides in pertinent part:

> A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction. . . .  The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person

49 U.S.C. § 32710(b).

Accordingly, pursuant to § 32710(b) the Court concludes Plaintiff is entitled to reasonable attorneys' fees and costs in this matter.

## II.  Plaintiff is entitled to attorneys' fees in the amount of $5,890.00.

### A.  Standards

The Supreme Court has reiterated under federal fee-shifting statutes such as TIMA that "the lodestar approach" is "the guiding light" when determining a reasonable fee. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1671-73 (2010)(internal quotation omitted).  Under the lodestar method the court first determines the appropriate hourly rate for the work performed and then multiplies that amount by the number of hours properly expended in doing the work.  *Id.*  Although "in extraordinary circumstances" the amount produced by the lodestar calculation may be increased, "there is a strong presumption that the lodestar is sufficient." *Id.* at 1669.  The party seeking an award of fees bears "the burden of documenting the appropriate

22 - OPINION AND ORDER

hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan For Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)(quotations omitted). When "determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

To determine the lodestar amount the court may consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances;(8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002)(quotation omitted). A rote recitation of the relevant factors is unnecessary as long as the court adequately explains the basis for the award of attorneys' fees. *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1995).

23 - OPINION AND ORDER

The lodestar amount is presumed to be the reasonable fee, and, therefore, "'a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts.'" *Summers v. Carvist Corp.*, 323 F. App'x 581, 582 (9th Cir. 2009)(quoting *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)). "Adjustments [to the lodestar amount] must be carefully tailored . . . and [made] only to the extent a factor has not been subsumed within the lodestar calculation." *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2009)(citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)).

**B.    Time Incurred in Connection with Plaintiff's Motion for An Award of Attorneys' Fees.**

Plaintiff seeks to recover fees for 31 hours spent by attorney Walgenkim investigating Grand Prix and the history of the BMW and drafting Plaintiff's Motion for Default Judgment, Plaintiff's Motion for An Award of Attorney Fees, and Plaintiff's Supplemental Memorandum. Because Grand Prix has not appeared in this action, it also has not objected to Plaintiff's requested hourly rates. Nevertheless, the Court has an independent duty to review a motion for attorneys' fees for reasonableness. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). *See also Cruz v. Alhambra Sch. Dist.*, 282 F. App'x 578, 580 (9th Cir. 2008)(The district court has an "obligation to articulate . . . the reasons

24 – OPINION AND ORDER

for its findings regarding the propriety of the hours claimed or for any adjustments it makes either to the prevailing party's claimed hours or to the lodestar.").

On this record the Court finds the amount of time expended by Walgenkim on this matter is reasonable. Accordingly, the Court awards Plaintiff 31 hours of attorney time incurred in connection with filing the Motion for Default Judgment, the Motion for An Award of Attorney Fees, and the Supplemental Memorandum.

**C.    Walgenkim's requested hourly rate.**

Walgenkim had three years of experience when he represented Plaintiff during this action and requests a rate of $250 per hour. To determine the reasonable hourly rate, this Court uses the most recent Oregon State Bar Economic Survey published in 2012 as its initial benchmark. Attorneys may argue for higher rates based on inflation, specialty, or any number of other factors. As noted, the Court pointed out in its March 22, 2016, Order that the Oregon State Bar Economic Survey reflects the rate for an attorney with three years experience practicing in Salem are considerably less than $250 per hour. Specifically, the Survey reflects attorneys with 0-3 years of experience practicing in Salem bill at an average rate of $150. Attorneys who are in the 75th percentile and 95th percentile bill at a rate of $175 per hour and $193 respectively. The Court, therefore,

requested supplemental briefing as to Walgenkim's requested rate.

In Plaintiff's Supplemental Memorandum and Declaration in Support Walgenkim notes he "maintains a Portland office" as well as an office in Salem.  In additon, all Defendants are in Portland, many of the violations occurred in Portland, and the case was brought in Portland.  According to Walgenkim, therefore, according to Walgenkim the Portland rate should apply.  The Court agrees and concludes Portland rates should apply.

The Oregon State Bar Economic Survey reflects attorneys with 0-3 years of experience practicing in Portland bill at an average rate of $182.  Attorneys who are in the 75th percentile and 95th percentile bill at a rate of $198 per hour and $246 respectively.

Walgenkim asserts he has practiced in Oregon since October 2012, has "litigated numerous cases on my own in both state and federal courts, deposed several witnesses, handled one bench trial and several arbitrations, and argued one case in the Oregon Court of Appeals, in which [he] obtained a successful reversal and remand."  Walgenkim Decl. at ¶ 21.  In addition to his practice experience, Walgenkim has "spoken at a CLE to a group of consumer lawyers about the verification standard of the FDCPA, a CLE on basics of Auto Dealer Fraud, and a CLE on the Magnuson-Moss Warranty Act."  *Id*. at ¶ 22.  Walgenkim has also been a guest lecturer in the Consumer Law class at Lewis and

Clark Law School on the topic of the Unfair Trade Practices Act. Walgenkim was also "a member of a rulemaking committee for the Oregon Administrative Rules concerning Motor Vehicle Price and Sales Disclosures . . . [and] testified at a legislative hearing on Oregon car dealers' financing practices in support of a bill (SB 276) to regulate lending practices of car dealerships." *Id.* at ¶ 25. Walgenkim asserts he is one of the few attorneys in Oregon who specialize in consumer litigation against car dealers. Finally, Walgenkim notes in January 2014 he was awarded a rate of $200 per hour in an action in Lane County Circuit Court and a rate of $175 per hour in a matter before Judge Michael Simon in *Campista v. Creditors Financial Group, LLC*, 3:13-C-00640-SI. Walgenkim notes he has received a rate of $250 per hour in private arbitration and "regularly" receives a rate of $250 "in settlements."

The Court notes a rate of $250 per hour would be equivalent to the rate for the 95th percentile of attorneys with 0-3 years of experience. This matter and this default judgment, however, involve a relatively uncomplicated civil-litigation issue rather than a complicated issue of business or corporate litigation, and, therefore, the Court concludes the 95% rate is too high.

On this record the Court concludes, in the exercise of its discretion, that the average hourly rate of $182 adjusted for

27 - OPINION AND ORDER

inflation to $190 is reasonable.  At that rate, the Court awards attorneys' fees to Plaintiff in the amount of **$5,890.00.**

## PLAINTIFF'S COSTS

Plaintiff requests an award of costs in the amount of $449.50 comprised of the fee to file this action and services fees.  Grand Prix does not object to Plaintiff's requested costs.

Absent a showing of circumstances not relevant here, an award of costs is governed by federal law.  *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003).

28 U.S.C. § 1920 allows a federal court to tax specific items as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1).  Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3)Fees and disbursements for printing and witnesses;
> (4)Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5)Docket fees under section 1923 of this title;
> (6)Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 – OPINION AND ORDER

Costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. Fed. R. Civ. P. 54(d). The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010). The costs sought by Plaintiff are specifically allowed under § 1920.

Accordingly, the Court awards costs to Plaintiff in the amount of **$449.50.**

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Plaintiff's Motion (#16) for Default Judgment as to Grand Prix Motors Only, **GRANTS** Plaintiff's Motion (#19) for an Award of Attorney Fees and Costs against Grand Prix Motors Only, and **AWARDS** Plaintiff attorneys' fees of **$5,890.00** and costs of **$449.50**.

The Court **DIRECTS** Plaintiff to submit a form of Judgment as to Defendant Grand Prix consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 22nd day of June, 2016.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

29 - OPINION AND ORDER